**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| SCOTT JOHNSON, | Case No.  21-cv-08591-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT AND VACATING FEBRUARY 23, 2023 HEARING** |
| SHIT-FONG LO, in individual and representative capacity as Trustee Under Declaration Of Trust Dated April 18, 1986, and ABDO SAAD ALWISHAH | [Re:  ECF No. 28] |
| Defendants. | |

In this action, Plaintiff Scott Johnson asserts claims under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ("Unruh Act").  *See* ECF No. 1 ("Compl."), at 8. Johnson seeks injunctive relief, statutory damages, attorneys' fees, and costs of suit.  *Id.* Defendants Shit-Fong Lo (in individual and representative capacity as Trustee Under Declaration of Trust Dated April 18, 1986) ("Defendant Lo") and Abdo Saad Alwishah ("Defendant Alwishah") (collectively, "Defendants") have failed to appear in this matter.  At Johnson's request, the Clerk of Court has entered default against both Defendants.  *See* ECF No. 21, 24.

United States District Court
Northern District of California

Now before the Court is Johnson's motion for default judgment.  ECF No. 28 ("Mot.").

Johnson has provided a proof of service showing that he served the motion on the Defendants, *see*

ECF No. 29, although there is no notice requirement for either the entry of default or Johnson's

motion.  *See* Fed. R. Civ. P. 55(a), (b)(2).  The Court finds this motion suitable for determination

without oral argument and VACATES the February 23, 2023 hearing.  *See* Civ. L.R. 7-1(b).  For

the reasons discussed below, the Court GRANTS IN PART the motion for default judgment.

## I.  BACKGROUND

According to the Complaint, Johnson is a level C-5 quadriplegic who cannot walk and has

significant manual dexterity impairments.  Compl. ¶ 1.  He uses a wheelchair for mobility and has

a specially equipped van.  *Id.*  Defendant Alwishah is the alleged owner of McKee Smoke Shop

("Store") at or about 2323 McKee Rd., San Jose, CA.  *Id.* ¶ 5.  Defendant Lo, in individual and

representative capacity as Trustee Under Declaration of Trust Dated April 18, 1986, is the alleged

owner of the real property located at or about 2323 McKee Rd., San Jose, CA.  *Id.* ¶¶ 2, 3.

Johnson allegedly went to the Store on three separate occasions in September 2021 "with the

intention to avail himself of its goods and services motivated in part to determine if the defendants

comply with disability access laws." *Id.* ¶ 10.  Plaintiff allegedly found that Defendant failed to

provide wheelchair accessible sales counters and entrance door hardware in conformance with

ADA standards.  *Id.* ¶¶ 12, 17.  Specifically, Johnson claims that the Store did not have any sales

counters that were less than 36 inches in height above the ground, and that the Store's entrance

door hardware "had a pull bar style handle that required tight grasping to operate."  *Id.* ¶¶ 14, 19.

Johnson alleges that removal of such accessibility barriers is readily achievable without much

difficulty or expense.  *Id.* ¶ 26.  Johnson alleges intent to return to the Store once it is made

accessible but claims that he is currently deterred from doing so because of his knowledge of the

existing accessibility issues.  *Id.* ¶ 27.  He brings claims under the ADA and Unruh Act and seeks

injunctive relief, statutory damages, attorneys' fees, and costs.  *Id.* at 8.

## II.  LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action,

who is neither a minor nor an incompetent person, and against whom a judgment for affirmative

relief is sought.  Fed. R. Civ. P. 55(a).  After an entry of default, a court may, in its discretion, enter default judgment.  *Id.* R. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding whether to enter default judgment, a court may consider the following factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those related to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted). "When the damages claimed are not readily ascertainable from the pleadings and the record, the court may either conduct an evidentiary hearing or proceed on documentary evidence submitted by the plaintiff."  *Johnson v. Garlic Farm Truck Ctr. LLC*, 2021 WL 2457154, at *2 (N.D. Cal. Jun. 16, 2021).

## III.    DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court discusses in turn jurisdiction, service of process, the *Eitel* factors, and Johnson's requested relief.

### A.    Jurisdiction

The Court has subject matter jurisdiction over this lawsuit.  Federal question jurisdiction exists based on Johnson's federal ADA claim, 28 U.S.C. § 1331, and the Court can exercise supplemental jurisdiction over his California Unruh Act claim.  *Id.* § 1367.

The Court also has personal jurisdiction over both Defendants.  Johnson has submitted public records indicating that the Store is owned by Defendant Alwishah and that the Store is a California corporation.  *See* Mot., Ex. 6 ("Defendants Pub. Recs."), at 2.[1]  General jurisdiction

---

[1] These public records are comprised of business information from the official website of the City of San Jose (www.sanjoseca.gov), *see* Defendants Pub. Recs., at 2, collated with information from

over a corporation is found where "the corporation is fairly regarded as at home," which includes "the place of incorporation and principal place of business." *Daimler AG v. Baumann*, 571 U.S. 117, 137 (2014) (citations omitted).  Defendant Alwishah is therefore subject to this Court's general jurisdiction.  As to Defendant Lo, specific jurisdiction exists where a defendant takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted) (alterations in original).  This can be achieved by "'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (citation omitted) (alterations in original).  Johnson has submitted public records demonstrating that the real property where the Store is located is owned by Defendant Lo.  Defendants Pub. Recs., at 6–7.  The ownership of this California property therefore satisfies the requirements for specific jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Accordingly, the personal jurisdiction requirement for both Defendants is satisfied.

## B.   Service of Process

When a plaintiff requests default judgment, the court must assess whether the defendant was properly served with notice of the action.  *See, e.g., Solis v. Cardiografix*, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012).  Federal Rule of Civil Procedure 4 provides that service may be effected in accordance with state law.  *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  Under California law, a corporation or limited liability company can be served by delivering the summons and complaint to one of an enumerated list of individuals, including the designated agent for service of process or the general manager of the entity.  *See* Cal. Civ. P. Code 416.10; *Vasic v. Pat. Health, L.L.C.*, 2013 WL 12076475, at *2 (S.D. Cal. Nov. 26, 2013).

Alternative means are also available to satisfy service of process.  In lieu of personal service on an individual, substitute service may be effected "by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class

---

the "TransUnion/TLO XP (TLO)'s California Ultimate Weapon Database."  Mot., Ex. 11 (Gunderson Declaration), at 3:13–23; *see generally* Defendants Pub. Recs., at 3–15.

mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. P. Code § 415.20(a). Additionally, a summons may also be "served by publication." *See* Cal. Civ. Proc. Code § 415.50(a)–(e). Service by publication is appropriate if it, *inter alia*, appears that "the party to be served cannot with reasonable diligence be served in another manner." *Id.* § 415.50(a); *see also id.* § 415.50(a)(1), (a)(2) (specifying additional requirements). If this type of summons if appropriate, "[t]he court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." *Id.* § 415.50(b).

The Court finds that both Defendant Alwishah and Defendant Lo were properly served with process. Johnson has filed a proof of service indicating that the summons and complaint were served on Defendant Alwishah's agent for service of process by substitute service pursuant to § 415.20. *See* ECF No. 11, at 1. The summons and complaint were left at the Store on December 7, 2021 at 2:52 PM with the person apparently in charge. *See id.* The summons and complaint were thereafter mailed to Defendant Alwishah at the same address. *See id.* For Defendant Lo, this Court has granted Johnson's request to furnish service of process by publication after finding that a cause of action exists against Defendant Lo, and that reasonable diligence was shown in prior attempts to serve process. *See* ECF 20, at 2–4. Johnson subsequently filed proof of service indicating that summons was served on Defendant Lo through publication in the San Mateo County Times, pursuant to Cal. Civ. P. Code § 415.50. *See* ECF No. 22. "A sworn proof of service constitutes 'prima facie evidence of valid service which can be overcome only by strong and convincing evidence.'" *G&G Closed Cir. Events, LLC v. Macias*, 2021 WL 2037955, at *2 (N.D. Cal. May 21, 2021) (quoting *Securities & Exchg. Comm'n v. Internet Solns. for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007)).

### C. *Eitel* Factors

The Court finds that the seven *Eitel* factors support entering a default judgment.

#### i. Factors 1 and 4–7

On the first *Eitel* factor, the Court finds that Johnson would be prejudiced without a default judgment against Defendant. Unless default judgment is entered, Johnson will have no other

means of recourse against Defendant. *See Ridola v. Chao*, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (plaintiff prejudiced without default judgment because she "would have no other means of recourse against Defendants for the damages caused by their conduct").

The fourth *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of Defendant's conduct. *See Love v. Griffin*, 2018 WL 4471073, at *5 (N.D. Cal. Aug. 20, 2018). Johnson seeks only statutory damages under the Unruh Act. While the sum requested is not insignificant, the Court finds it proportional to the conduct alleged.

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether Defendants failure to respond was the result of excusable neglect. *See Love*, 2018 WL 4471073, at *5; *Ridola*, 2018 WL 2287668, at *13. Because Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a possibility of a dispute as to material facts. Moreover, there is no indication that Defendants' default was due to excusable neglect. Defendants have not appeared or responded in this action, suggesting that they have chosen not to present a defense in this matter. Accordingly, these factors weigh in favor of default judgment.

On the seventh and final *Eitel* factor, while the Court prefers to decide matters on the merits, Defendants' failure to participate in this litigation makes that impossible. *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment, therefore, is Johnson's only recourse. *See United States v. Roof Guard Roofing Co. Inc.*, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

### ii. Factors 2 and 3

Under *Eitel* factors 2 and 3, the Court finds that the Complaint alleges meritorious substantive claims for relief under the ADA and the Unruh Act, and that the facts in the Complaint, taken as true, establish the alleged violations of those statutes.

Johnson must establish Article III standing, which requires that he demonstrate he suffered

United States District Court
Northern District of California

1    an injury in fact, traceable to Defendants' conduct, and redressable by a favorable court decision.

2    *See Ridola*, 2018 WL 2287668, at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150,

3    1162 (S.D. Cal. 2006)).  Johnson claims that he suffers from a disability, that he personally

4    encountered access barriers at the Store because it lacked wheelchair-accessible sales counters and

5    door hardware, and that he will return to the restaurant once it is made accessible.  *See* Mot., Ex. 2

6    ("Johnson Decl.") ¶¶ 3, 4, 9; *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949

7    (9th Cir. 2011) ("Demonstrating an intent to return to a noncompliant accommodation is but one

8    way for an injured plaintiff to establish Article III standing to pursue injunctive relief."); *Vogel v.*

9    *Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014).  Johnson has thus alleged facts

10    establishing that he has standing under the ADA.

11    On the merits, Title III of the ADA provides that "[n]o individual shall be discriminated

12    against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

13    privileges, advantages, or accommodations of any place of public accommodation by any person

14    who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §

15    12182(a).  For purposes of Title III, discrimination includes "a failure to remove architectural

16    barriers ... in existing facilities ... where such removal is readily achievable[.]" 42 U.S.C. §

17    12182(b)(2)(A)(iv).  To prevail on his Title III discrimination claim, Johnson must show that (1)

18    he is disabled within the meaning of the ADA; (2) Defendant is a private entity that owns, leases,

19    or operates a place of public accommodation; and (3) Johnson was denied public accommodations

20    by Defendant because of his disability.  *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.

21    2007).  To succeed on an ADA claim based on architectural barriers, Johnson "must also prove

22    that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2)

23    the removal of the barrier is readily achievable."  *Ridola*, 2018 WL 2287668, at *5.

24    Johnson has plausibly pled an ADA claim.  First, Johnson has adequately alleged that he

25    has a disability within the meaning of the ADA by alleging that he is a C-5 quadriplegic who

26    cannot walk and uses a wheelchair for mobility.  Compl. ¶ 1.  Second, he has alleged that is a

27    Defendant Alwishah owns, leases, or operates a place of public accommodation—the Store.  *Id.*

28    ¶¶ 4, 11; *see also* 42 U.S.C. § 12181(7)(E) (listing "clothing store, hardware store, shopping

center, or other sales or rental establishment" as a place of public accommodation).  Relatedly, Johnson has also alleged that Defendant Lo is the owner of the real property where the public accommodation is located.  Compl. ¶¶ 2, 3.  Court have previously found that both the real property owner as well as the occupier of that property may be liable in ADA cases.  *See Love v. Thompson*, 2021 WL 6882379, at *6 (N.D. Cal. Feb. 19, 2021), report and recommendation adopted, 2021 WL 6882388 (N.D. Cal. Apr. 2, 2021) ("the real property owner and the business owner are liable in ADA barrier cases.").  Third, Johnson alleges that during his visit to the Store, he personally encountered an access barrier: the lack of wheelchair-accessible sales counters and door hardware.  *See* Johnson Decl. ¶¶ 3, 4.  Johnson alleges that the sales counters were too high for wheelchair users and that the door hardware configuration was also a barrier to access.  *See id.*  Additionally, Johnson has alleged that removal of these barriers is "readily achievable" because they are "easily removed without much difficulty or expense" and they are an example of "the types of barriers identified by the Department of Justice as presumably readily achievable to remove."  Compl. ¶ 26; *see also Garlic Farm Truck Ctr. LLC*, 2021 WL 2457154, at *6 (finding substantially similar allegations sufficient for default judgment).  Thus, these facts will result in a violation if the alleged conditions are not in conformance with the controlling ADA standards.

The Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), found in the ADA's implementing regulations at 28 C.F.R. Part 36, provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945.  "On March 15, 2012, new federal accessibility standards for alterations and new construction went into effect, known as the 2010 ADA Standards for Accessible Design ('2010 Standards')." *Ridola*, 2018 WL 2287668, at *7.  "The 2010 Standards consist of the 2004 ADA Accessibility Guidelines (ADAAG) and the requirements contained in 28 CFR part 36 subpart D."  28 C.F.R. § Pt. 36, App. B.  "Alterations to facilities undertaken after March 15, 2012 must comply with the 2010 Standards."  *Ridola*, 2018 WL 2287668, at *7 (citations omitted).  Alterations undertaken prior to that date must comply with the 1991 ADAAG ("1991 Standards").  *See id.*

Johnson does not explicitly assert which set of ADA Standards control this matter.  The

8

Court will presume that the 2010 Standards apply, although, as noted below, Plaintiff would be entitled to default judgment under either set of standards.[2]  The 2010 Standards require that "[a] portion of the [sales or service] counter surface . . . [be only] 36 inches (915 mm) . . . above the finish floor." ADAAG §§ 904.4, 904.4.1, 904.4.2.  Here, Johnson alleges that "[t]here was no counter that was 36 inches or less in height that . . . [he] could use for his transactions."  Compl. ¶ 14.  Moreover, the 2010 Standards also require that the door hardware should "be operable with one hand and . . . not require tight grasping, pinching, or twisting of the wrist."  ADAAG § 309.4; *see also* § 404.2.7 ("operable parts on doors and gates shall comply with 309.4.").[3]  Here again, Johnson alleges "that the entrance door hardware had a pull bar style handle that required tight grasping to operate."  Compl. ¶ 19.  Therefore, under the 2010 Standards, the Store is clearly in violation of the accessibility requirements.

Accordingly, the Court finds that Johnson's ADA claim is adequately pled and substantively meritorious in light of Defendant's failure to respond in this action.  Johnson has also sufficiently alleged an Unruh Act claim because "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act."  *M.J. Cable*, 481 F.3d at 731; Cal. Civ. Code § 51(f).  Thus, the second and third Eitel factors also favor default judgment.

### D.     Requested Relief

The Court has found default judgment appropriate, so now it considers Johnson's request for injunctive relief, statutory damages, and attorneys' fees and costs.

#### i.     Injunctive Relief

Johnson requests an order directing Defendants to provide wheelchair accessible sales counters and accessible door hardware at the Store.  Mot. at 2.  Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to

---

[2] Even if the 1991 Standards controlled this matter, the alleged conditions at the Store would still be in violation of the accessibility requirements.  *See* Compl. ¶¶ 13–14, 18–19; 28 C.F.R. § Pt. 36, App. D, at 36–37, 61.

[3] More specifically, ADAAG § 309.4 outlines that "[t]he force required to activate operable parts shall be 5 pounds (22.2 N) maximum."  Johnson has not pled the specific amount of force required to open the door.  However, in previous default judgements, this court has not required Plaintiffs to plead with that level of specificity on this issue.  *See Johnson v. VN All. LLC*, 2019 WL 2515749, at *5 (N.D. Cal. June 18, 2019).

United States District Court
Northern District of California

1  alter facilities to make such facilities readily accessible to and usable by individuals with

2  disabilities.'" *M.J. Cable*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)).  Injunctive relief is

3  also available under the Unruh Act.  *See Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022,

4  1061 (N.D. Cal. 2007).  Injunctive relief is thus proper where Johnson establishes that

5  "architectural barriers at the defendant's establishment violate the ADA and the removal of the

6  barriers is readily achievable."  *Ridola*, 2018 WL 2287668 at *13.  Accordingly, the Court grants

7  Johnson's request for injunctive relief to bring the sales counters and door hardware in line with

8  the 2010 Standards.

9         ii.    **Statutory Damages**

10        Johnson seeks statutory damages of $4,000 for each instance of discrimination he

11  encountered at the Store.  Compl. at 8.  Johnson has alleged in his Complaint that he visited the

12  Store three times in September 2021.  Compl. ¶ 10.  However, in Johnson's Application for

13  Default Judgment, he requests statutory damages "for one distinct encounter in November 2021."

14  Mot., Mem. P. & A. ("Supporting Memo"), at 12.  The Court will presume that the date in the

15  Supporting Memo is a typographical error, as the Declaration and Photographs submitted by

16  Johnson indicate a September 2021 visit.  *See* Johnson Decl. ¶ 2, 6; Mot. Ex. 3 (Johnson

17  Photographs).  In any case, the Court has previously declined to award statutory damages for

18  multiple visits to the same facility on a motion for default judgment.  *See Garlic Farm Truck*

19  *Center LLC*, 2021 WL 2457154, at *8 (granting only $4,000 in statutory damages because "it is

20  unclear why [Johnson] repeatedly visited [the facility] when he knew the business was in violation

21  of the ADA" and "[b]ehavior by [Johnson] indicates that his repeated visits are motivated by a

22  desire to increase statutory damages").  The Court will therefore award $4,000 in statutory

23  damages, for which the Defendants shall be jointly and severally liable.

24        iii.   **Attorneys' Fees and Costs**

25        Johnson requests $3,000 in attorneys' fees under both the ADA and the Unruh Act for

26  work performed by 5 attorneys and 14 legal assistants, as well as $1,364 in costs.  *See* Supporting

27  Memo at 12, 19; Mot., Ex. 10 ("P.H. Invoice").  In support of the fees requested, Johnson presents

28  detailed billing entries, expert analysis of fees for ADA-plaintiff attorneys by fee experts Richard

United States District Court
Northern District of California

Pearl and John O'Connor, and a survey report pulled from the Real Rate Report.  *See* P.H. Invoice; Mot., Exs. 7, 8, 9.  Further, Johnson cites case law from this district and others that have granted attorneys' fees at the hourly rates Johnson is requesting.  Supporting Memo at 16–18.  The Court finds that this evidence only partially substantiates Johnson's requests for attorneys' fees and costs.

### a.  Legal Standard

The ADA and the Unruh Act give courts the discretion to award attorneys' fees to prevailing parties.  *See M.J. Cable*, 481 F.3d at 730 (citing 42 U.S.C. § 12205); *Vogel*, 992 F. Supp. 2d at 1016 (citing Cal. Civ. Code § 52(a)).  Whether calculating attorneys' fees under California or federal law, courts follow "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). Under the lodestar method, the most useful starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  *Id*.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986).  "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997).  The fee applicant bears the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).  Further, "[t]he district court should exclude hours that were not 'reasonably expended.'" *See Hensley*, 461 U.S. at 434.

### b.  Rates

The Court finds that the rates Johnson seeks exceed those that have been granted in this

community for similar work performed by attorneys of comparable skill, experience, and reputation.  The relevant community for this action is the Northern District of California.  For attorneys with approximately 20 or more years of experience, courts in this district have generally approved hourly rates ranging from $350 to $475 in disability cases.  *See, e.g.*, *Castillo-Antonio v. Lam*, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019) (approving, on motion for default judgment, $350 hourly rate for attorney with over 20 years of experience); *Johnson v. Castagnola*, 2019 WL 827640, at *2 (N.D. Cal. Feb. 21, 2019) (approving $350 hourly rate for attorney with 20 years of litigation experience, noting that requested rate was unopposed by defendant and in line with rates approved in Northern District); *Johnson v. Baglietto*, 2020 WL 3065939, at *11, *12 (N.D. Cal. May 21, 2020) (awarding a $475 hourly rate in a substantially similar case and finding this rate reasonable based on similar awards granted in the Northern District).  Many of these cases have considered the same evidence that Johnson submits here and have found that it does not support the rates he seeks.  *See e.g.*, *Johnson v. Huong-Que Rest.*, 2022 WL 658973, at *5 (N.D. Cal. Mar. 4, 2022) (analyzing declarations of Mr. Handy, fee experts Mr. Pearl and Mr. O'Connor, and the Real Rate Report, and finding only lower rates justified).

This Court finds the analysis of those cases persuasive and will award hourly rates in line with those cases.  Moreover, this Court finds it prudent to align hourly compensation rates with other, recent cases in this court where the same attorneys have brought substantially similar matters.  Mr. Russell Handy will be awarded an hourly rate of $475.  *See Johnson v. Rando*, 2022 WL 2981820, at *5 (N.D. Cal. July 28, 2022).  Ms. Amanda Seabock will be awarded an hourly rate of $350.  *See Johnson v. Shahkarami*, 2021 WL 1530940, at *9 (N.D. Cal. Apr. 19, 2021).  Ms. Tehniat Zaman will be awarded an hourly rate of $250.  *See Huong-Que Rest.*, 2022 WL 658973, at *5.  Mr. Chris Seabock will be awarded an hourly rate of $350.  *See Whitaker v. D.S.A. Sports, Inc.*, 2022 WL 4280639, at *6 (N.D. Cal. Sept. 15, 2022).  Mr. Dennis Price will be awarded an hourly rate of $350.  *See Johnson v. Ends In E. Inc.*, 2021 WL 5565842, at *3 (N.D. Cal. Nov. 29, 2021).

Johnson has also requested reimbursement of fees for legal assistants at an hourly rate of $100 and for Marcus Handy at an hourly rate of $200 for "his experience as a skilled legal

assistant and paralegal." *See* Mot., Ex. 1 ("Handy Decl."), at 5–6; *see also* P.H. Invoice at 2–5. The Court agrees with other courts in this district that an hourly rate of $100 is reasonable for paralegal and legal assistant fees. *See Whitaker v. Joe's Jeans Inc.*, 2021 WL 2590155, at *5 (N.D. Cal. June 24, 2021). However, the Court has previously rejected a higher billing rate for Marcus Handy based on similar submissions. *See An Khang Mi Gia*, 2021 WL 5908389, at *9 (finding insufficient justification for a $200 hourly rate). Though the Court recognizes the experience detailed in the declaration, *see* Handy Decl. at 5–6, it still finds the experience insufficient to award an hourly rate of $200. Mr. Handy will be awarded an hourly rate of $100.

### c.   Hours

Johnson requests fees based on 10.6 hours of work. *See* P.H. Invoice. This Court has recently found as much as 9.1 hours of work to be reasonable for similar cases. *See e.g., Johnson v. Shao*, 2022 WL 767278, at *5 (N.D. Cal. Mar. 14, 2022). Johnson's billing summary shows 10.6 hours were expended in this litigation: Mr. Russell Handy expended 1 hour, Ms. Amanda Seaback expended 2.4 hours, Ms. Zaman expended 0.7 hours, Mr. Chris Seaback expended 0.2 Mr. Dennis Price expended 0.2 hours, and paralegals and staff expended 6.1 hours. *See* P.H. Invoice.

The Court has reviewed the itemized statement of Mr. Johnson's counsel's legal work and finds that the number of hours requested is excessive. Specifically, it is unreasonable for this relatively boilerplate litigation to have passed through five attorneys and fourteen legal assistants, which creates inherent duplication of effort and inefficiencies. Indeed, as prior courts have noted, "[t]he sheer number of ADA cases that Johnson's counsel is litigating simultaneously underscores the straightforward nature of their cases." *Ends In E. Inc.*, 2021 WL 5565842, at *3. The Court will only allow recovery of 3.0 of the 6.1 hours requested for paralegals and staff. *See Johnson v. Pennylane Frozen Yogurt, LLC*, 2022 WL 1750382, at *6 (N.D. Cal. May 31, 2022) (reducing paralegal and staff hours from 5.0 to 3.0 hours for a substantially similar motion). Additionally, the Court will exclude the time expended by attorneys Dennis Price and Chris Seaback. It is inconceivable that their respective 12 minutes of effort contributed to the effective prosecution of the case.

*d. Costs*

In addition, Johnson seeks service costs ($562.00), filing fees ($402.00), and investigation costs ($400.00).  *See* P.H. Invoice.  The ADA provides that the prevailing party may recover "litigation expenses and costs."  *See VN Alliance LLC*, 2019 WL 2515749, at *8 (awarding costs, filings fees, and investigation costs); 42 U.S.C. § 12205.  With respect to the investigation fees, the Court has reviewed the declaration of investigator Randall Marquis and finds that Mr. Marquis has failed to state an hourly rate or otherwise account for the $400 requested.  *See* P.H. Invoice; Mot., Ex. 4 ("Marquis Decl.").  Nonetheless, assuming a reasonable rate of $100 per hour, the tasks described could easily have been performed in two hours or less.  *See* Marquis Decl., at 2–3. Thus, the Court finds an award of $200 (two hours of work at an hourly rate of $100) to be more reasonable than the $400 requested.  Accordingly, the Court grants Johnson's request for $200 in Investigator Fees.

*e. Summary*

The Court's award of fees and costs is summarized below.

| Name | Rate Awarded | Hours Awarded | Preliminary Fees Awarded |
|---|---|---|---|
| Russell Handy | $475 | 1.0 | $475 |
| Amanda Seabock | $350 | 2.4 | $840 |
| Tehniat Zaman | $250 | 0.7 | $175 |
| Other Staff | $100 | 3.0 | $300 |
| | | **Total Fees** | $1,790 |
| | | **Costs** | $1,164 |
| | | **TOTAL Fees & Costs** | $2,954 |

//

//

//

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

- Johnson's motion for default judgment is GRANTED IN PART;

- Johnson is AWARDED statutory damages in the amount of $4,000;

- Johnson is AWARDED $2,954 in attorneys' fees and costs;

- Johnson is GRANTED a permanent injunction against all Defendants which shall require the Store to bring its sales counters and door hardware into compliance with the 2010 Americans with Disabilities Act Standards for Accessible Design; and

- Johnson SHALL promptly serve Defendants with this Order and file a proof of service with the Court.

Dated:  October 19, 2022

BETH LABSON FREEMAN
United States District Judge